I have an excuse. It's number 2010, 1218 Michael S Sutton Ltd. against Nokia Corporation. Mr. Johnson. May it please the court. The district court committed several errors because he failed to follow this court's rules for claim construction. In particular, he found that the term data information message does not include a control message. He found that he also inserted language into step two of method claim three that required method step two to stop when that contingent was not met. You agree that data information message does not include an unmodified message? We would agree with that, Your Honor. And I'm having trouble understanding why we don't have an internal inconsistency here in the claim. I mean, if in fact this is a sequential step rather than an alternative step, you agree that the district court was right? No, Your Honor. The reason being is step one and step two must be read together because their contingents actually are mutually exclusive. Well, that's what I'm saying. If they're sequential, then you lose, right? Well, because if you begin with step one. No, Your Honor. No? Even if they're sequential, you can win. How? Because the district court found that you can start step one and before you finish step one, you can begin step two. That was a finding of the district court because this is done on a computer. These method steps can be done where you begin one. Before you end that step, you can begin another step. And so even though that would be sequential, you can begin one. And in fact, you have to begin one in order to begin two because to determine the contingent of step two, which is configured for only data information messages, the only thing you're asking is, can I receive an unmodified message? Am I configured for that? And that is the contingent of step two, of step one, I apologize. So whenever you determine that particular part of the contingent of step one, you are in fact also determining the contingent of step two. And if the contingent of step two is true, it directs you to process the packet according to steps three to eight. But if the contingent of step one is true, then the contingent of step two is false and then step one also directs you if... I'm not understanding. You agreed that data information message means modified message. So in step one, it says if the receiver is configured to receive unmodified messages, and step two says if the receiver is configured to receive only modified messages, that seems to be inconsistent. They're mutually exclusive because let me just take a step back and see and determine what steps one and two are actually trying to accomplish. They're trying to filter out unmodified messages and they do it in two ways. If you're configured to receive unmodified messages, then you want to look at the packet to see if there's a header. The absence of a header indicates that this is an unmodified message and you want to send it to the user's application. So how can you proceed according to steps two to eight if it's an unmodified message since two excludes unmodified messages? Well, if it's an unmodified message, you don't proceed to step two. Actually, step one directs you to send that unmodified message off to the user's application without processing it. It's an unmodified, it's a regular text or paging message that has not been modified according to the teaching of the patent. And step, the figure one sort of indicates that you exclude that. It's not part of the invention. We don't want to process it or decode it because it's not part of the invention. So in that scenario, you would simply pass it to the user's application without processing it. And in fact, when you have that scenario, both the contingent of step one is false and the contingent of step two is false. So the only alternative you have there is to send it to the user's application. Now, there are two other possible outcomes with respects to steps one and two. We just talked about one of them. The second outcome is where you do not have a configuration where you can receive unmodified messages. Your receiver is not configured to receive unmodified messages. In that case, the contingent of step one is false. But when you make that determination, the contingent of step two is true. And so now the contingent of step two kicks in, tells you to process it according to steps three to eight. And so these two steps work together to actually perform those three possible outcomes. I may be confused. In fact, I know I'm confused. But if the received packet has a predetermined header and the receiver is configured to receive an unmodified message, then you process according to two through eight, right? That's correct, John. If the receiver is configured to receive only data information messages, which is inconsistent with receiving an unmodified message, then you process according to steps three through eight, right? That's correct. So aren't you processing with the same steps regardless of whether you've got a modified or unmodified message? Absolutely, Your Honor. And that's exactly what the patent teaches. If you have- That's a stupid way of saying it, isn't it? Well, I don't know that it's, it's actually because you have these three outcomes. And once you, the puzzle actually does fit together. But let me just correct one thing. With respect to step one, it's not simply saying, go to step two. It's saying, I now have a modified message. And so I'm going to process it. It directs the processing as a modified packet according to steps two to eight. So it accomplishes two things. It basically defines, if you will, steps two to eight to be the steps for processing a modified packet. And in that configuration, the configuration of step two, you are configured to only receive modified messages. Now, albeit when you have, when you- But your problem is that step one says the receiver's configured to receive unmodified messages and step two says it's not. That's right. Those are two alternatives- So it has to be completely inconsistent? It's not. Whenever you want, with respect to step two, that's what the district court did. Basically, he inserted a stop language in step two. When it's false, you stop. And I would ask the court to refer to column 13. This is a logical- I don't think you're addressing my problem. My problem is we're talking about how the receiver is configured. In step one, it's configured to receive unmodified messages. In step two, it's configured so it can't receive unmodified messages. That seems to be inconsistent. Well, let me make this statement. It's determining the configuration. It's not saying it's configured both ways at the same time. It's determining as to whether or not it is configured for unmodified messages. And if it's not, step two is equally true now. Because now you have the alternative configuration- When you're re-sounds like you're rewriting the claim, is the way it should have been. We're not rewriting the claim, Your Honor, because the contingent of step two is directly related and linked to the contingent of step one. When you determine one, you're determining the other. And you start off with step one because the first thing you're looking for is the receiver configured. The receiver is looking, am I configured for unmodified messages? If I'm not, then the contingent of step two is now true. With respect to step one, if I am, and there's a header on the packet, then it says to process this packet- But your problem is it's not what it says, you know? I mean, that's your problem. But I guess, and again, I must admit I'm confused, but if one is true, then you go to steps two through eight, correct? Correct, Your Honor. And if one is true, then two is false? Correct. Why do you go from one to two if one is true, if you already know that two is false? Why does step one set you to step two rather than step three? Because in step one, it's not, like I was saying, it's not just simply a jump to step two. It's really identifying that the steps for processing the packet as a modified packet are steps two to eight. Now, you've already indicated that step two at that point is false, but there's nothing in the language of the claim that says to stop. And so if you just simply move to the next process, which is how the patent actually teaches in the processing steps, and I would refer to column 13, steps 10 and 11 and 12, you have two contingent steps that when they are false, you actually begin to process the packet because the patent teaches that logical technique. And it's used normally in programming where you have a conditional, the conditional is not met, you simply continue the processing unless you have something that tells you to stop. And that's what the district court did was he inserted language there that says stop, or you have the logical fallacy of denying the antecedent because nothing in step two tells you to stop when it's false. And you have a directive from step one telling you to process it according to steps two to eight, step two is false in that circumstance. So then you continue on to step three to eight. I don't understand what you're talking about. I mean, step one says the receiver is programmed to receive unmodified messages. Step two is configured only to receive modified messages. So the receiver configuration has to be different in step one and step two, no? It does, Your Honor, but that's what the claim is. Where does, where, then why would step one tell you to proceed to step two when step two can't be performed because of the condition of step one? Well, and I just want to make sure, step one is telling you to proceed to process the packet as a modified packet according to steps two to eight. Now, that does not tell you to go to step one and then stop if step two is false, I apologize. But it's telling you to process it from steps two to eight. Now, at that point, step two is false because you don't, you have a different configuration, but that does not prevent you from moving to down to step three to eight. And in fact, you know you now have a modified packet. Step one tells you for modified packets, you go from steps two to eight, and then you can process the packet. And I would refer- Was your perception that the district judge understood what the invention was that was trying to be patented and was concerned with the difficulty of claim writing, the protocols of the way claims are written and processed in the patent office, or is your perception that the trial judge felt that there was an inconsistency in the invention that was being presented such that the entire invention and structure could not be deemed to be enabled? I believe it's the latter, Your Honor, where he determined that there was an inconsistencies between steps one and two, such that- In the claim. In the claim. Let's just say that it can be read that way. Is your understanding that the district judge's concern was that the invention had not been properly claimed or had not been properly set forth and therefore enabled in the spec? His decision relied entirely on the claim language, that the claim was not properly written to be consistent. It claimed an impossibility and therefore the claim itself could not be enabled because it claimed an impossibility. He did not refer to the written specification in his ruling. He simply read the claim language, found that steps one and two were inconsistent with each other and therefore it was impossible to perform. And I assume that you explained or tried to that claims are read and understood in light of the specification? We did, Your Honor. We asked that the district court would construe these claims, especially with respect to steps two and eight. He also found an impossibility there. And we asked that these, but we also specifically addressed the conclusion. If you just look at that one possibility where you are configured for unmodified messages and the packet has a header and it tells you to process it according to steps two to eight if you get to step two, it's false. Nothing there tells you to stop. And to read, to input language there telling you to stop is adding language to the claim. Otherwise, you have the if A not B logical fallacy. And that's, and again, I would refer to column 13 where basically steps one and two or the process of steps one and two are written a little differently. It's another example, but it follows that logical technique of simply if you have a contingent without an alternative and it's false, it just continues down to the next one. That contingent's false, it continues down to the next one. And it says by the time you get to step 12 at column 13, it says if I'm here, that it must be just simply a data information message that I need to modify. And so it's a logical technique that is used in the patent that shows that when the contingent is false, then you continue down to the next step because there's nothing in that patent claim that tells you to stop. And so when you read steps one and two together to accomplish that goal, and you know that step two and step one, you could have step one and step two as alternatives. It's not written that way because it tells you if the receiver is configured to receive unmodified messages, then you go to step two to eight, but you can't perform step two to eight if it's configured to receive unmodified messages. Your Honor, I would object to saying that we cannot perform a contingent step unless it's true. I do not believe that that's an, that performance, and I would also refer to the Cyber Settle case where it said if you don't meet the contingent, you don't have to be capable. And now it's a little different, but it's an infringement issue. But it's saying if you don't meet the contingent, you don't have to be capable of performing the consequent of that contingent. And in this case, what we're saying is if you don't meet the contingent of the step, there's nothing in the step that tells you to stop processing it. And so if you stop there, you're, first of all, you're contradicting the teaching of the patent because the patent teaches that you can continue processing when the contingent is not met. And that's a column 13, step 10, 11, and 12, where you have contingent steps which have not been met, but it continues down the next step. And that's what we're urging the Court here. Do not add language into step two that says stop. It's not in there. And, well, no, I mean, you know, you've got this clear language in claim one, and you're just ignoring it. It says if it's configured to receive unmodified messages, then go to two. But you can't go to two if it's configured that way. You can go to two, but two is false, and then you just continue to three. There's nothing in the language, and I guess, well, if you would agree with me that a contingent step can be either true or false, and if it's false, then you do not perform the consequent of the contingent. And so what the Court would then say ... You can have two claims, one that said if it's configured to receive unmodified messages, do this. If it's configured to receive modified messages, do this. That would be a simple way of writing the claim. It would be perfectly fine. There wouldn't be anything wrong with it, but it wasn't written that way. That's the problem. But we're trying to ... But the claim was written in a way that accounted for all three possibilities, and if you have the word only in there where you have this mutual exclusivity between the contingent of step one and the contingent of step two, you read them together, and there's nothing in step two that tells you to stop. And if we have a rule now that if you have a contingent step in a claim that if the contingent is not met, you stop processing, because step one does not tell you to stop. What about the district court step? Well, if you get to step two and the contingent is false, and we agree that if you got there from step one, the contingent is false, then what about that being false tells you to stop? If I follow your reasoning, then if it's a modified message, you process it the same way you process a non-modified message, right? No, if it's a modified message, you process it according to steps two to eight. If it's an unmodified message and you're capable of receiving unmodified messages, you send it to the user's application as an unmodified paging message. Okay, let's hear from the other side and do a little bit of proceedings for you. Thank you, Your Honor. Thank you, Mr. Johnson. Mr. Josephry. Thank you. Sutton obviously wishes that the applicant had written this claim differently and the specification differently, but as this court has repeatedly held,    I think that's what we're trying to do. I think that's what we're trying to do. It's a way of informing the public of what's been patented, and as a result, they now have to stand on the patent that they wrote and that they got from the PTO and not try to present another one today. As written, Claim 3 is clearly inoperable for reasons that the court's questioning has already gone over. The most basic and first reason, though, is... They examined it and objected to it, and we know that there are protocols with claim drafting and the need for an overall generic claim, and if it was understandable to the examiner, and if it's in accordance with the specification, then I think we need to look a little bit more deeply to determine enablement and the other requirements of patentability. Right. Although the question here is operability. This is not an enablement case, at least at this moment. The question here is whether the claim as written... As written, not as someone might have meant it to be, but whether the clear language of the claim as written creates an inoperability issue. Because if so, this court has lots of cases. The question is whether the invention presented by the applicant is applicable. If it's not properly claimed, that's a different question. But that is the... Which is what I assumed was the question before us. The question before the court is whether this particular claim... And this is the whole point of having claims now and specifications. There was a time when we didn't have claims. But the whole point of claims is to see is this particular claim, the way it's written, the way it's claimed, is this claim operable? And the reason it's not, as the Court's already gone over in terms of its clear and plain and unambiguous language, is that the conditions of... Step 1 specifies that if certain conditions are satisfied, then process the message according to Steps 2 through 8. Step 2, however, can never be performed because Step 2's conditions for processing the message are incompatible with the conditions that were set forward in Step 1. Which means two things. First, although Step 1 requires processing according to Step 2, there can never be processing according to Step 2 because the conditions as written are clearly incompatible. And the second additional thing that means is that you also can never reach Steps 3 through 8 under the plain language of all of this. Now, there are a few points that came up that I should address. First, Judge Newman, you were asking about, well, how do we read the slide of the specification? The specification is quite informative in a few respects because the first thing, one thing that's unmistakably clear from the specification of preamble and everything else is that the whole point of this invention is to send modified messages, messages that have started off as 8-bit messages, over a traditional unmodified paging system. So for this invention to even get going, the receiver has to be configured to receive unmodified messages because that means it's a traditional paging system, it's what we're supposed to be using. But it also has to be modified to receive modified messages because that's what we're supposed to be processing, which confirms that Steps 1 and 2 have to be cumulative requirements because it's Step 1 that talks about being configured to receive unmodified messages, and Step 2 that talks about it being configured to receive modified messages, or a particular type of modified message called a data information message. So if you go to the specification in basic purpose, you know for certain that Claims 1 and 2 were specifically written the way they are to be cumulative because otherwise you're not even practicing what the specification describes the invention as being. In addition though, it's true that sometimes a step may be a contingent step where it says if and maybe you perform it, maybe you don't in some instances. But here there are a couple of crucial points. One is the point that Judge White's question went to, which is that under their reading, as the District Court pointed out, Step 2 would simply be surplusage. Because under their reading, from Claim 1 we know it's a modified message. Because a modified message has a predetermined header. So Step 1 tells us that we're going to Steps 2 through 8 if we have a modified message. But they then read Step 2 to just say, in all instances, no matter what, go to Step 3. Their view of Step 2 is that it says if certain conditions are satisfied, go to Step 3. If those conditions are not satisfied, go to Step 3 anyhow. And it's not proper under this Court's decisions and hamanetics and other cases to read a claim limitation to be pure surplusage like that. Their other argument seems to be that, well, Step 2 doesn't expressly... Step 2 says if certain conditions are satisfied, then process according to Steps 3 through 8. And again, in addition to reading that as surplusage, which is impermissible, their argument seems to be that, well, it doesn't expressly say what to do if the condition's not satisfied, and therefore you can just ignore it. But if I were to tell... But the necessary implication here is obvious. Because if my red light were to come on and I told the Court, if you'd like to hear more from me, I'll be happy to keep talking, I think you'd all understand that the clear negative implication was that I'm not going to keep talking no matter what you say. And it's the same here. It says if certain conditions are satisfied, then go to Steps 3 through 8. Those conditions being satisfied is the only way to get to Steps 3 through 8. Which is why, as written, it just doesn't work the way that they're describing it. Now... And then beyond that, if you look at the specification for further consultation, what you get is that the specification makes clear, as they confirm, that a data information message is not an unmodified message. And that's all that we need to know to read the plain language of the claims, as written, to confirm that it's an invalid claim. And the Court's done that in lots of cases that are cited in our brief. In Chef America, for example, the clear point of the invention was to bake dough. But as written, the claims would entail not baking dough, but incinerating it to the point that it turned into a charcoal-like substance. And this Court held that the patent applicant's the one that gets to draft this patent. It's therefore bound with the claims that it writes. And therefore, even if that would be nonsensical, even if it would defeat the purpose of the invention, that's the nature. That's the patentee's burden as the one that actually wrote the claim. And there are numerous similar decisions in the Court that we cite in our brief. Was there a period of claim construction in the argument before the District Court? Yes. The District Court went through full-markment proceedings in which it construed all of the claim terms that the parties presented to it as disputed terms. And those included terms like control message and unmodified message that are of relevance here. Now, one of the arguments that you might be picking up on from their brief is that they say, well, the District Court never expressly construed this phrase configured to receive only a particular type of message. Now, the reason that wasn't presented in markment is that it has a plain and ordinary meaning. Configured to receive only one type of message means configured to receive only that type of message. And then in a sur-reply brief on summary judgment, they raised, they said, well, you should have construed that term. And the two points there are that, first, a sur-reply brief on summary judgment is just too late to be requesting a new construction of a provision that's plain and ordinary in any event. But the additional thing is that the court did, because what Judge Davis said, although it was implicit, is he said, considering everything that they've put forward, none of it works, because it would all either rewrite the claim or, what amounts to the same thing, treat portions of the claim as being pure surplusage. So the court worked through all of their arguments and came to the same conclusion we set forth in our brief, which is that, however you slice this, step one expressly says, if it's processed, if certain conditions are satisfied, then process according to steps two through eight, which means you just can't skip over two, because one expressly calls you to two. And the other reason you can't skip over two is that it would read it to be surplusage, which is impermissible under cases like Hamanetics. Now, if the court is interested in briefly hearing about the alternative invalidity theory, about the disjoint between steps two and eight, the basic point there is that step two, as we've been talking about, refers to going to steps three through eight if the receiver is configured to receive only data information messages. Step eight, however, calls for processing only control messages. And that's a logical impossibility, because control messages are not a type of data information message. We know that in a couple of respects. Although, again, the court doesn't need to reach this because one ground for inoperability is sufficient, but if the court is interested in this issue, we know that control messages are not data information messages in a few ways. First, the preamble to claim three expressly refers to processing data information messages and control messages, so it calls them out as being separate things. Sutton then responds, well, maybe a control message is a type of data information message, which is to say maybe data information message refers to modified messages generally, including control messages. But there are four reasons that that can't be the case. The first is that the specific, again, claim three itself refers separately to data information messages, control messages, and modified packets. So the specification, the claim itself is referring to modified and data information as being different things. Second, we know that data information messages are assigned to specific subchannels, but control messages are not, which means control messages can't be data information messages. At Markman, the district court construed a control message to be a message that, among other things, does not have a subchannel. They have not disputed that on appeal, presumably because the specification specifically says in a couple places, quoted in our brief, that subchannels are assigned to data messages, not to control messages. But under the claim, we know that data information messages are assigned to subchannels because that's what step seven of this claim does. It validates the subchannel, which means looks to the subchannel that was assigned when it was sent. And then the final couple points are just that a data message, which is what we think a data information message is, and a data information message are perfectly logical synonyms for one another. A data information message is not at all a logical way of referring to a modified message generally. And in fact, when you read the six claims in the patent, all of them refer either to data messages or to data information messages. And if you treat the two as being synonymous, it all makes perfectly good sense and is perfectly parallel between the six claims. If you try to treat a data information message as being a modified message, you just have something altogether different. You're talking just briefly about the numerical limitation of subchannels? Absolutely. It's a simple point that the term subchannel does not have a plain and ordinary meaning. It's not self-defined. And I think they agree with that because their own proposed definition of subchannel is a service type or information path. And whatever that may mean is certainly not a plain or ordinary meaning. So because the term subchannel does not have a plain and ordinary meaning, then this Court necessarily looks to the specification to attempt to determine its meaning. And here there are two crucial things about the specification. The first is that the specification expressly says that the invention, not an embodiment, but it expressly says the invention supports 256 subchannels per receiver identification address. And under this Court's cases, that's dispositive where if a claim term does not have a plain and ordinary meaning and the specification describes that the invention is having a particular attribute, then it does because of the public notice function of claims and specifications. Or does it say the invention has 256 subchannels? Certainly. I'll call your attention just to a few of them. There are at least 15 references to 256 subchannels scattered throughout. But I understand. On appendix page 53 in column 14, starting around line 13, it says the invention supports, and then it drops to the next line, targeted addressability of 256 subchannels per receiver identification address. Supports. Perhaps a little different than is. In this context, I don't think so because the specification is saying that this is what the invention supports. It's not just a random statement that supports 256. What it's saying is this is what it supports. The point being that that is what's being disclosed as being supported. I would also call you, again it says supports, but in column 4, this is on page 48 of the appendix, column 4, starting around line 20, it says in summary the present protocol supports and again goes through targeting of up to 256 addresses. There are other statements that, and so in other words, what it's saying is what it supports. It's not saying it supports anything else or suggesting it supports anything else. The other point is that this Court has also indicated in a couple of cases, including Bell Atlantic and Nystrom, that even setting aside references to the invention, that if a patent specification consistently and repeatedly describes an ambiguous term in a certain way, that it thereby defines it by implication. Again, because of the public notice function. If a term is ambiguous, I read the specification and it always uses the term in one way, then that's how the patentee has impliedly defined the term. And here we have no fewer than 15 references to exactly 256 subchannels that are scattered throughout the specification, starting with the tables on the opening pages of the patent, through the summary of the invention section, which is one of the places I was just referring you to, through some confirming references in the detailed description of the preferred embodiment, running through the preambles to half of the claims. Is there anywhere you think it suggests more than 256? The possibility of more than 256? There's one place which strongly confirms our view, which is that the construction here is 256 subchannels per receiver identification address. And there's one place that they point to in the specification, and this is where... One place they point to in the specification, and this is on page 852, column 12. It's lines about 32 to 33, they start with the number 7 and 8. What that refers to is 1 to 256 times 4 subchannel availability. And they correctly say that that refers to having 4 times 256 subchannels. What Sutton testified to in his deposition, which is correct, is what this is saying is that if you have more than one subchannel, if you have more than one receiver identification address, you can have more than one set of 256 subchannels. So if you want 4 times that number of subchannels, you have 4 receiver identification addresses. But what that means is that the only thing that this patent teaches about a number other than 256 subchannels is to have more than one receiver identification address, which just confirms that it's 256 per receiver identification address, which was Judge Davis's claim construction. Other than that, there's no reference in here whatsoever. Also, the way that the patent teaches getting to 256, which, by the way, is an extremely logical number when you're talking about 8-bit bytes, the only way that the patent teaches about getting to the number of subchannels is it says, we use one 7-bit byte, which is 128 combinations, for the subchannel. There's then a framing byte that goes at the beginning of the packet, and there's 7 bits in the framing byte, and the specification allocates a different function to each of those 7 bits. And it says to use one of those bits, exactly one, and it tells you which one to use for subchannel purposes. That's what doubles you from 128 to 256 subchannels. So everything that the patent teaches is entirely consistent, 100% consistent, with the on-point statement that the invention supports exactly 256 subchannels, the repeated statements to that effect throughout, and the fact that it's even in the preambles to half of the claims that confirm that. Thank you, Mr. Joseph. Mr. Johnson. I want to modify your claim. If you eliminated Step 2 and re-numbered 3 through 8 as 2 through 7, if Step 1 read, if the received packet is modified or unmodified, then go to Steps 2 through 7, unless the packet is... has a header, and then send the message to the user's application. Is that what you say 1 and 2 accomplish? Not really, Your Honor, because the header is an indication that it's a modified message. The absence of a header indicates that it's an unmodified message whenever you're configured for unmodified messages. Maybe I misspoke. If the received packet is modified or unmodified, then go to 2 through 7, unless the unmodified message has a header and then send a message to the user's application. And again, it's the absence of a header that indicates to send it to the user's application, because it's simply a paging message. Okay, then... I'm sorry, yeah, okay. It doesn't have a header. Then you send it to the... What do you do? But... Again, this... At that point, the way to determine... the way the system is set up is that if you are configured to receive unmodified messages, the way to distinguish between unmodified and modified is to look to the header. But if your receiver is configured that it can always receive modified messages and only modified messages in Step 2, then you don't need to look to the header. You simply process the packet. And to get to the statement again about Step 2, if every step in a method claim has to be performed for infringement, but we have a finding that a contingent step that is false is not performed, then I think that that's going to be a problem, especially in claim construction, because there are claims that are written with contingent steps. You can accept that proposition, but that doesn't deal with the language of Step 1. That's your problem. If Step 1 said, if it's an unmodified message, do this, and Step 2 said if it's a modified message, do this, you could have a claim that was written that way. It isn't. That's the problem, because Step 1 tells you to go to Steps 2 to 8 when you can't, because Step 2 can never be performed if the conditions you want are satisfied. And I guess that's the disagreement, because you can perform Step 2 by finding it false and then continuing to 3 to 8. And I would ask the Court to look at that technique at Column 13, where specifically it's doing what Steps 1 and 2 are doing, and it's doing using that technique. If the contingent is false, you continue down to the next step. It's Column 13, Steps 10, 11, and 12, accomplishing the same thing with that logical technique. And that's clearly what the patent teaches. The person of ordinary school in the order would understand that logical technique so that the claim works perfectly, and that's why you have only in there, so that you have that mutual exclusivity between the Steps 1 and 2, and when you perform Step 1, you are performing Step 2. And if Step 2 is true, and that contingent, then you perform Steps 3 to 8. And I see... Isn't there an implication that if something says, if this occurs, do that, and if this doesn't occur, you don't do that? That's the denying the antecedent fallacy, where you read into the contingent step that if the contingent is false, then the negative of the consequent must be true. You're basically saying, if the receiver is not configured as in Step 2, then don't do Step 3 to 8. And that's the logical fallacy that we pointed out in our briefing, that you have to either write that language into the claim, or engage in that logical reasoning that's simply just not part of the claim. Okay. Any more questions? Maybe we should ask him to address briefly the 256. Yes, would you respond to the 256 issue? Thank you, Your Honor. With respect to Client 256, the standard used by the district court was, and this is his language, the specification discusses 256 subchannels. And there's nothing in the specification that would broaden that range, therefore I'm going to limit it to 256. And what we haven't heard from Nokia is clear language from the specification that is an express, manifest, exclusion, or restriction to 256. Well, let me ask you this. Assuming that we don't agree with your position on 256, would that end the case anyway? With respect to 256, we have a stipulation of non-infringement, that if the subchannel is limited to 256, then there is no infringement. On Claims 1? And we would assume that the subchannel would also apply to Claim 3 as well. Okay. But there is no clear disavowal of 256 subchannels, or greater than 256. Well, there may be, but that's not the rule. There doesn't have to be a clear disavowal. The question is what subchannel means. And so we're interpreting subchannel in the light of the specification, right? Well, the subchannel number is the term that's in Claim 1. And so we all agree that it's a number. And now they've taken the range of numbers that's indicated in that embodiment. And I think it's important to understand that Claim 1 is a method for preparing a packet. And Nokia agrees that the construction for packet is not limited to the strict packet structure that's indicated in Figure 4. In fact, they agree that the construction of packet is a data structure containing data for digital transmission. And so they've never said that you have to use the exact header that's in Figure 4. You have to use everything in the exact position. In fact, the only thing they've said is you have to take subchannel, which is a portion of the data portion of the packet, and now you're limited to that. But the subchannel number is just a product of the amount of space that you've allotted in the packet. And so to increase the number of channels, you simply add one bit. You can add multiple bits. A person of ordinary skill in the art who would understand how to add a whole new communications channel to a device, which they agree a person of ordinary skill in the art looking at this patent would be able to do, would also understand that you... Would be able to, but reading the specification, what you're telling us now, none of that is really there in the specification. Well, it's there by implication. For instance... By silence? It teaches this. It says if you have a subchannel that's between 0 and 127, you put it in the first part of the data portion. If it's greater than 127, you add an extra bit, and you use one bit that's in the frame byte. By implication, it's teaching if you want to increase the number of subchannels, you can add extra bits. And the position that's in the specification in the packet, it's at the beginning of the data portion. There's nothing there that would prevent someone from simply allocating extra bits. And so if you want more information, if you want a 16-bit number, which would allow for 65,000 subchannels, you just simply say in the beginning of the data structure, instead of 7 bits, I'll add 8 more bits. And so there, you've increased the number of subchannels. You haven't had to add any addition. The question is whether the claim covers it. The claim does cover it, because the term there is just simply subchannel number. And I would refer the court to the cases of Karatek, which was the term there was security indicia. Everywhere in the specification it used a cryptographic key for security indicia. But the court says we're not going to read that into the claim, because it's not in the claim. Also in the Gillette case, where you had a razor blade, which in the claim it had blades, first, second, and third blades, and the district court on the other side said everywhere in the specification you talked about three blades. You mentioned three 30 times or tertiary 30 times. And this court says that wasn't enough. There was not a clear statement of a disavowal or restriction of claim scope, and we're not going to read that limitation into the claim. And that's what we're asking this court to do with respect to subchannel. Okay. Any more questions? Any more questions? Then the case is taken under submission. Thank you both. Thank you, Your Honor. All rise. The matter of the court is adjourned until this afternoon at 2 p.m. Let's go.